82 F.3d 417
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Mary DURIO, Plaintiff-Appellant,
v.
COMMISSIONER OF SOCIAL SECURITY, Defendant-Appellee.
 No. 95-1089.
 United States Court of Appeals, Sixth Circuit.
 April 10, 1996.
 
 Before: KEITH, NELSON, and SILER, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is an appeal from a summary judgment in which the district court upheld a denial of supplemental security income benefits. The plaintiff, Mary Durio, has suffered from systemic lupus erythematosus (SLE) for nearly 25 years. As a result of the disease and the treatment for it, Ms. Durio has developed rheumatoid arthritis and osteoporosis. She has also lost part of a lung. Ms. Durio's claim for benefits was denied after a hearing before an administrative law judge. Ms. Durio sought judicial review, and the matter was referred to a magistrate judge who recommended that the decision of the ALJ be upheld. This recommendation was accepted by the district court.
 
 
 2
 Ms. Durio argues on appeal that the administrative law judge erred as a matter of law (1) by failing to give proper deference to the opinions of treating physicians; (2) by failing to evaluate her subjective complaints and nonexertional impairments properly; and (3) by failing to include these subjective complaints and nonexertional impairments in a hypothetical question posed to vocational expert. Concluding that the ALJ applied the proper legal standards, see Preslar v. Secretary of Health & Human Servs., 14 F.3d 1107, 1110 (6th Cir.1994), and concluding further that the denial of benefits was supported by substantial evidence, we shall affirm the judgment entered by the district court.
 
 
 3
 * We cannot say that the ALJ failed to give proper deference to the treating physicians' opinions. It is true that Dr. William Moore, who treated Ms. Durio for 16 years, concluded that she was "unable to work" and that she was "barely able to manage herself, and should be considered permanently disabled." Ms. Durio argues that the ALJ disregarded Dr. Moore's assessment of the severity of her SLE, and thus of her pain. But there is nothing in Dr. Moore's reports stating that Ms. Durio was unable to work because of the severity of her pain. The weight to be accorded the physician's conclusion as to disability depends upon the nature of the medical facts upon which the physician relies in reaching his conclusion--and in the final analysis, of course, it is the ALJ, not the treating physician, who must decide whether a claimant is disabled for purposes of the Social Security Act. See Walker v. Secretary of Health & Human Servs., 980 F.2d 1066, 1070 (6th Cir.1992); 20 C.F.R. § 416.927(e)(1).
 
 
 4
 We are not persuaded that the ALJ ignored a report prepared by another treating physician, Dr. McIntosh. Although the ALJ did not specifically discuss Dr. McIntosh's conclusion that the SLE had led to "severe polyarthritis," the ALJ did discuss the plaintiff's problems involving pain and swelling in her ankles and knees--the symptoms upon which the diagnosis of polyarthritis is based. The ALJ specifically indicated that he had carefully considered all of the documents in the record. In light of his discussion of the symptoms of the plaintiff's arthritis, it does not appear that the ALJ overlooked Dr. McIntosh's report.
 
 
 5
 Nor did the ALJ overlook the opinion of Dr. William Barkey, a dermatologist who evaluated Mrs. Durio on one occasion. The ALJ specifically relied upon Dr. Barkey's conclusions that "[d]espite her severe systemic involvement she has no real significant skin manifestations of systemic lupus." Although Ms. Durio may believe that Dr. Barkey's opinion should have been evaluated differently, she cannot complain that it was ignored.
 
 
 6
 Ms. Durio also contends that the ALJ failed to consider Dr. Moore's conclusion that her condition was deteriorating. What Dr. Moore said, in a May 1993 report, was that he had "watched this person become progressively disabled by her condition until at this point in her life, she can barely manage for herself." The ALJ specifically quoted this passage in his opinion; it was clearly not ignored. We also note that a March 1993 report prepared by the doctor stated that Ms. Durio's condition was "stable." Reading the two reports together, the most plausible understanding of Dr. Moore's assessment in the spring of 1993 was that Ms. Durio's condition had deteriorated, but was now stable.
 
 II
 
 7
 The ALJ does not appear to have committed legal error in his evaluation of Ms. Durio's subjective complaints of pain, fatigue, and anxiety. This court has set forth a two-part test for evaluating subjective complaints of disabling pain. First, we determine whether there is objective evidence of an underlying medical condition. If so, we consider whether there is "objective medical evidence to confirm the severity of the alleged pain," or whether the medical condition is "of a severity which can reasonably be expected to give rise to the alleged pain." Duncan v. Secretary of Health & Human Servs., 801 F.2d 847, 853 (6th Cir.1986). Although it is clear that Ms. Durio has established an impairment that could produce the pain alleged, the evidence was not such as to obligate the ALJ to find that the SLE, or other related conditions, would necessarily produce disabling pain.
 
 
 8
 Ms. Durio points out that Dr. Moore's office notes indicate that in February of 1990 she complained of "severe" joint pain, and that again in October of 1991 she complained of "having excess joint pain." The notes from the other 19 office visits between May of 1987 and June of 1992, however, contain no equivalent material. It is true that the report prepared by Dr. McIntosh indicates Ms. Durio "suffers from severe pain and respiratory distress due to ... lung lesions," and that she complained of pain and swelling in her ankles and knees and the thumb on the left hand and "severe elbow pain and morning stiffness lasting for about one hour." But the report from Dr. McIntosh appears to be a characterization of the plaintiff's complaints, rather than the results of any independent medical evaluation.
 
 
 9
 Just as Dr. Moore did not give pain as a reason that Ms. Durio could not work, we note that a psychiatric evaluation conducted by Gordon Forrer, M.D., indicated that Ms. Durio displayed "no outward signs of pain, discomfort, anxiety or depression." Ms. Durio was given Tylenol 3 to control her pain, and there is no indication in the record that this medication was ineffective. It also seems relevant that Dr. Moore's most recent report indicated that during an eight-hour workday the patient could stand one hour, walk one hour, and sit six hours, and that she did not need assistance in her home. Based upon the record, we believe that there was substantial evidence to support the Secretary's determination that Ms. Durio did not suffer from disabling pain.
 
 
 10
 We do not think that the ALJ erred as a matter of law in finding that Ms. Durio was not disabled by fatigue. None of the medical reports indicates fatigue so severe that she should be considered permanently disabled thereby. And although Ms. Durio indicated that she frequently took naps during the daytime, the record does not establish that these naps were medically required. In fact, Dr. Moore's conclusion that Ms. Durio could engage in eight hours of sitting, standing and walking would seem to indicate that she did not require a nap during the workday.
 
 
 11
 Ms. Durio also contends that the ALJ improperly rejected Dr. Moore's conclusion that she suffered from "chronic anxiety." But the sole mental health practitioner to evaluate Ms. Durio, Dr. Forrer, found that she suffered from "no forthright psychiatric disorder." In light of Dr. Forrer's evaluation, we do not believe that the ALJ erred in this regard.
 
 III
 
 12
 Ms. Durio contends that the hypothetical question posed to the vocational expert was inadequate in that it failed to include her pain, fatigue, and agoraphobia. But the vocational expert heard Ms. Durio's entire testimony, and the ALJ's question not only incorporated the functional limitations set forth by Dr. Moore, but required the vocational expert to accord Ms. Durio's testimony "full credibility." As to the agoraphobia, moreover, Dr. Forrer found that Ms. Durio suffered from only "mild difficulty" in crowds and that there was "no psychiatric impairment of her capacity to carry out the activities of everyday life."
 
 
 13
 The judgment of the district court is AFFIRMED.
 
 
 14
 KEITH, Circuit Judge, dissenting.
 
 
 15
 I would remand this case for an award of benefits for it is clear to me that the ALJ's decision was not supported by substantial evidence.